```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| MADELEINE A. PICKENS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 06-56-JMH |
| ) | (consolidated with 06-336-JMH) |
| ) | |
| v. ) | |
| ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| J. MICHAEL PAULSON, in his ) | |
| individual capacity, as ) | |
| syndicate manager of the ) | |
| Theatrical syndicate; ) | |
| ) | |
| J. MICHAEL PAULSON, in his ) | |
| capacity as trustee of the ) | |
| Allen E. Paulson Living Trust, ) | |
| as syndicate manager of ) | |
| the Theatrical syndicate; and ) | |
| ) | |
| J. MICHAEL PAULSON, in his ) | |
| capacity as trustee of the ) | |
| Allen E. Paulson Living Trust, ) | |
| ) | |
| Defendants. ) | |
| ) | |

                    **    **    **    **    **

This matter is before the Court on cross motions for summary judgment [Record Nos. 84 and 85]. The matter being fully briefed, it is now ripe for review.

## I.   Background

Madeline Pickens ("Plaintiff" or "Madeline") and Allen Paulson married in December of 1988. They remained married until Allen's death on July 19, 2000. At the time of his marriage to Plaintiff, Allen Paulson had three sons from a previous marriage, including Defendant Michael Paulson ("Defendant" or "Michael"). Allen

Paulson operated a Thoroughbred racing and breeding operation, an operation in which Plaintiff participated after her marriage to Allen Paulson.  Allen Paulson owned hundreds of horses or syndicate shares of horses.  At the center of this litigation are two syndicate shares, A24 and A27, of the stallion, Theatrical (the "Shares").

Madeline alleges that Allen Paulson gifted the Shares to her, while Michael claims the Shares are owned by the Allen E. Paulson Living Trust (the "Trust"), of which Michael is the trustee.  Complicating the matter is the fact that the parties have previously engaged in extensive litigation in the California courts over the ownership of numerous horses and shares of horses, which ultimately resulted in a final release of claims and settlement agreement.  Because the issue of who owns the Shares has previously been decided, the Court need not recount the many details and documents surrounding the transfer of the Shares.

In 2001, Michael and his co-trustee filed in the Probate Department of the San Diego County Superior Court (the "California court") a Petition for Instructions Regarding Title to Certain Horses and Interests in Horses as Assets of the Trust Estate (the "Heggstad petition").[1]  The Heggstad petition claimed that the

---

[1] Named for a famous California case, a Heggstad petition seeks an order determining that certain property belong's to a decedent's trust, rather than a decedent's estate, and therefore is not subject to probate.  See *Estate of Heggstad*, 20 Cal.Rptr.2d 433 (Cal. Ct. App. 1993).

Trust owned 33 shares in the Theatrical syndicate. Claiming she was the rightful owner of Shares A24 and A27 of the Theatrical syndicate, Madeline objected to the inclusion of the two disputed Shares in the Heggstad petition. Michael agreed to defer the issue of the ownership of Shares A24 and A27. The Heggstad petition was then modified to seek an order as to only 31 shares in the Theatrical syndicate. The California court granted the Heggstad petition, reflecting the Trust's uncontested interest in 31 share of the Theatrical syndicate, excluding Shares A24 and A27.

In 2002, Michael filed two petitions seeking to divest Madeline of not only the Theatrical Shares, but all horses and horse interests Allen Paulson had given to Madeline. In his petition filed March 29, 2002 (the "First Horse Petition"), Michael sought an order determining the right, title and interest of the trust in and to horses traded between Allen Paulson and Madeline in the year of Allen Paulson's death. By his petition filed April 22, 2002 (the "Second Horse Petition"), Michael, as trustee of the Trust, sought to recapture the remainder of Madeline's horses and horse interests, as well as other property. Specifically, Michael's Second Horse Petition sought to determine the right to "all horses and interests in horses claimed by Madeline or under her control."

On July 29, 2002, Madeline filed in the California court a petition for order that proposed action will not constitute a

3

contest of will or trust (the "No Contest Petition"). Madeline desired to file a complaint on two creditor's claims which were rejected by the Trust, and wanted to ensure that her complaint would not run afoul of the no contest clauses in Allen Paulson's will and the Trust. The court issued its Final Statement of Decision and Order on January 10, 2003, granting Madeline's No Contest Petition and holding, *inter alia*, that by filing the Horse Petitions, Michael "impliedly, if not expressly, conceded that the horses upon which Madeline's creditors' claims and proposed Complaint are based are currently . . . titled to or owned by Madeline, not the Trust," and thus, Madeline was not asserting an interest in assets owned by the Trust, thereby violating the no contest provisions.

Shortly after the California Court issued its ruling on Madeline's No Contest Petition, the parties began negotiating for a global settlement. In a January 23, 2003 letter from his attorney, Michael proposed as a settlement term that "Madeline shall release and relinquish and transfer to the Trust any claim or interest she may have in . . . two (2) shares of Theatrical." By letter dated January 27, 2003, Madeline rejected that proposed settlement term and proposed that the settlement agreement contain language that "Madeline shall retain two (2) shares of Theatrical." Shortly thereafter, the parties executed a Settlement Agreement and Mutual General Release (the "Settlement Agreement"). The

4

Settlement Agreement made no provision for transfer of the Theatrical Shares to the Trust. The Settlement Agreement also operated as a release of claims between the parties, stating:

> Except as otherwise provided for in this Agreement, the Parties . . . hereby release each and every one of the other Parties . . . from any and all claims, rights, debts, liabilities, demands, obligation, losses, damages, penalties, contracts, covenant, fees, costs, expenses, including legal fees, actions and causes of action of every nature, character, and description, including but not limited to those claims asserted in the Petitions, whether known or unknown, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, asserted or unasserted, fixed or contingent, from the beginning of time to the date of this Agreement.

Judge Cline approved the Settlement Agreement on March 14, 2003. As contemplated by the Settlement Agreement, Michael withdrew his Horse Petitions with prejudice on March 20, 2003.

Following the execution and approval of the Settlement Agreement, Madeline contacted Hill N' Dale Farm, where Theatrical stands at stud, to arrange use of her two annual nominations, A24 and A27, to breed her mares to Theatrical. When one of the two breedings produced a live foal, Hill N' Dale Farm billed Madeline for the breeding. Believing that she owned two Shares, and was thus entitled to two annual nominations, Madeline contacted her attorney regarding the bill from Hill N' Dale. Madeline's attorney was informed by John Sikura of Hill N' Dale Farm that Michael had directed the billing and that Michael asserted that the Trust, not Madeline, owned the Shares, and thus, Madeline was responsible for

5

payment for the successful breeding. Madeline alleges that Michael improperly directed Hill N' Dale to continue to bill her for the breeding, delayed release of the stallion certificate associated with the successful breeding, refused to grant Madeline access to the syndicate records, and directed income associated with Madeline's Shares to the Trust, all in breach of the 2003 Settlement Agreement.

In an attempt to address what Madeline believed to be a breach of the Settlement Agreement, she filed in the California court a motion to enforce the Settlement Agreement. Judge Cline granted that motion, concluding that Madeline owned the Shares at the time of settlement and had not transferred the Shares to the Trust. Michael appealed Judge Cline's ruling, and the Fourth District Court of Appeals agreed with Michael that the trial court no longer had jurisdiction. Madeline subsequently filed a new action in California state court, which Michael removed to the Southern District of California and which action was ultimately transferred to this Court.

## II. Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving

6

party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record,

7

taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Analysis

By this action, Madeline seeks to enforce the Settlement Agreement, in which she claims Michael released all claims against her, including any claims he may have to the disputed Theatrical Shares.  It is Michael's argument that Madeline's claims of ownership of the Shares are without merit, as they were never properly transferred to her by Allen Paulson.  Because the parties executed a release of claims in the Settlement Agreement, the party who did not own the Shares at the time the Settlement Agreement was executed has waived any right to make further claim to them.

The Settlement Agreement provides that it "shall be governed by and interpreted, construed and enforced pursuant to the laws of the State of California, without regard to principles of conflicts of law."  Accordingly, this Court shall interpret and construe the Settlement Agreement pursuant to California law.

Whether a prior state court judgment precludes re-litigation of issues raised in a later federal diversity action is determined by reference to state law principles of collateral estoppel. *Matsushita Elec. Indus. Co., Ltd. V. Epstein*, 516 U.S. 367, 374, 375 (1996).  California courts require that three elements be

present for the application of collateral estoppel:

> 1) The issue decided in the prior adjudication must be identical with the one presented in the subsequent litigation;
> 2) The issue must have been actually litigated and finally decided in the earlier action; and
> 3) The party against whom the doctrine is asserted must have been a party or in privity with a party to the earlier action.

*Rymer v. Hagler,* 211 Cal. App. 3d 1171, 1179 (1989).

The parties in this action are undoubtedly the same parties as were present in the California action. Despite Defendant's argument to the contrary, the very issue of who, as between Plaintiff and Defendant, had ownership of or title to the Theatrical Shares was litigated and decided by the California court in the context of Madeline's No Contest Petition. By her No Contest Petition, Madeline sought an order that she was the rightful owner of certain horses and interests in horses, because if she were not, her contemplated legal action would run afoul of the no contest provisions in Allen Paulson's will and the Trust.

In its Statement of Decision and Order Granting Madeline Paulson's Petition for Order that Proposed Action Will Not Constitute a Contest of Will or Trust, the California court, Judge Cline presiding, found that by filing the Horse Petitions, Michael "impliedly, if not expressly" conceded that the horses at issue in the Horse Petitions were "titled to or owned by Madeline, not the Trust." Accordingly, any claim by Madeline would not be a claim against the Trust, as the horses and horse interests were owned by

9

Madeline. The court went on to note that in his Horse Petitions, "Michael is arguing in essence that while Madeline currently owns the horses, ownership should be returned to the Trust." The court rejected Michael's argument that it was ruling on how Michael's Horse Petitions would be resolved and stated that "the only issue is whether the horses [at issue in the Horse Petitions] are currently titled in Madeline's name. The court finds that they are." This Statement of Decision and Order was filed January 10, 2003, prior to the parties' execution of the Settlement Agreement.

In his Second Horse Petition, Michael sought an order declaring rights to "all horses and interests in horses claimed by Madeline or under her control." Although the Theatrical Shares are not mentioned specifically in the Horse Petitions, it logically follows that they were included in Michael's Second Horse Petition as horse interests "claimed by Madeline" because of the all-encompassing language contained in the Second Horse Petition and because of prior dealings between the parties. Michael included in the Second Horse Petition all horse interests claimed by Madeline, and he knew Madeline asserted an interest in the Theatrical Shares because Madeline asserted that interest when Michael filed the Heggstad Petition. Upon Madeline's objection to the inclusion of the Theatrical Shares in the Heggstad Petition, Michael removed the Shares from his Heggstad Petition; therefore, any claim that he was unaware of her asserted interest in the Theatrical Shares would be

10

disingenuous.

In addition to the ruling on the No Contest Petition, Michael had other reasons to be aware of Madeline's asserted interest in the Theatrical Shares. During the parties' negotiation of the Settlement Agreement, Michael's attorney requested as a provision in the Settlement Agreement that "Madeline shall release and relinquish and transfer to the Trust any claim or interest she may have in . . . two (2) shares of Theatrical." By this correspondence, Michael seemed to acknowledge Madeline's interest in the Theatrical Shares.

Michael emphasizes to the Court that "as of August of 2001, the THEATRICAL shares at issue were in the name of the Trust on the books and record of the Syndicate and that they and THEATRICAL, himself, were in the control of the Defendants." The California court has previously determined that Madeline owned the horses and horse interests at issue in the Horse Petitions, which included all horses interests claimed by Madeline, and did not find the fact that the Syndicate records listed the Trust as the owner of the Shares to be dispositive of the issue.

California courts have taken their cues on the definition of collateral estoppel from the Restatement (Second) of Judgments' and define "final judgment" to include "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Sandoval v. Sup. Ct.,* 140 Cal.

11

App. 3d 932, 936 (1983) (*citing* Restatement 2d Judgments, § 13). The California court's ruling that the horses and horses interests contained in Michael's Second Horse Petition were "titled to or owned by Madeline, not the Trust," is contained in its final order on the No Contest Petition, which was fully briefed by the parties. Accordingly, the California court's ruling in its Statement of Decision and Order on the No Contest Petition that the horses at issue in the Horse Petitions were owned by Madeline immediately preceding the execution of the Settlement Agreement was a conclusive adjudication of an issue actually litigated. The Shares were owned by Madeline prior to execution of the Settlement Agreement and the Settlement Agreement made no provision for transfer of the Shares. As he released all claims against Madeline, including "those claims asserted in the Petitions," Michael shall not interfere with Madeline's ownership of the Shares.

The Settlement Agreement signed by the parties includes the following provision regarding attorneys fees:

> In the event of any litigation between the Parties to enforce any of the provisions of this Agreement or any right of any Party arising out of this Agreement, the unsuccessful Party to such litigation agrees to pay to the prevailing Party all costs and expenses, including reasonable attorney's fees incurred by the prevailing Party, all of which shall be included in and be a part of the judgment rendered in such litigation.

By virtue of the above provision and her status as the prevailing party in this action, Madeline Pickens is entitled to an award of

attorneys fees incurred in enforcing the Settlement Agreement.  By separate Order, the Court will set a briefing schedule on the issue of attorney fees.

### IV.  Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

1) That Plaintiff's motion for summary judgment [Record No. 85] be, and the same hereby is, **GRANTED;**

2) That Defendant's motion for summary judgment [Record No. 84] be, and the same hereby is, **DENIED;** and

3) That Plaintiff's motion in limine [Record No. 111] be, and the same hereby is, **DENIED AS MOOT.**

This the 27th day of November, 2007.



**Signed By:**
*Joseph M. Hood*
**Senior U.S. District Judge**