UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| MADELEINE A. PICKENS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-56-JMH |
| | ) | (consolidated with 06-336-JMH) |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| J. MICHAEL PAULSON, in his | ) | |
| individual capacity, as | ) | |
| syndicate manager of the | ) | |
| Theatrical syndicate; | ) | |
| | ) | |
| J. MICHAEL PAULSON, in his | ) | |
| capacity as trustee of the | ) | |
| Allen E. Paulson Living Trust, | ) | |
| as syndicate manager of | ) | |
| the Theatrical syndicate; and | ) | |
| | ) | |
| J. MICHAEL PAULSON, in his | ) | |
| capacity as trustee of the | ) | |
| Allen E. Paulson Living Trust, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

** ** ** ** **

On November 27, 2007, this Court entered a Memorandum Opinion
and Order [Record No. 115] granting Plaintiff's motion for summary
judgment and denying Defendant's motion for summary judgment.  By
its previous Opinion and Order, this Court determined that,
pursuant to the Settlement Agreement and Mutual General Release
("Settlement Agreement") executed by the parties in early 2003,
Defendant J. Michael Paulson had released all claims to shares A24
and A27 of the Theatrical syndicate and Plaintiff Madeline A.
Pickens was the rightful owner of those shares.

The Settlement Agreement signed by the parties includes the following provision regarding attorneys fees:

> **Recovery of Attorneys' Fees and Costs.** In the event of any litigation between the Parties to enforce any of the provisions of this Agreement or any right of any Party arising out of this Agreement, the unsuccessful Party to such litigation agrees to pay to the prevailing Party all costs and expenses, including reasonable attorney's fees incurred by the prevailing Party, all of which shall be included in and be a part of the judgment rendered in such litigation. For purposes of this Agreement, the term "litigation" shall include all forms of dispute resolution before a neutral third party, including, without limitation, mediation, arbitration, and courtroom proceedings.

Settlement Agreement at ¶ 41. By virtue of the above provision and her status as the prevailing party in this matter, Plaintiff is entitled to an award of attorney fees incurred in enforcing the Settlement Agreement.

The Settlement Agreement contains the following choice of law provision: "**Governing Law.** This Agreement shall be governed by and interpreted, construed and enforced pursuant to the laws of the State of California, without regard to principles of conflicts of law." Settlement Agreement at ¶ 42. Accordingly, this Court will apply California law in deciding the award of attorney fees.

## I. BACKGROUND

The Court incorporates herein by reference the factual background of the underlying contract dispute as set forth in its previous Memorandum Opinion and Order [Record No. 115] and adds the following facts pertinent to the issue of attorney fees.

2

## A.  Madeline's 664.6 Action and Michael's Appeal

In early 2003, the parties to this matter executed the Settlement Agreement.  Perhaps anticipating that there would be disagreements regarding the Settlement Agreement itself, the parties agreed that an action pursuant to California Code of Civil Procedure § 664.6 would be the appropriate mechanism for handling disputes regarding the Settlement Agreement.  "Except as otherwise provided in this Agreement, the Parties agree the Court retains jurisdiction to interpret and enforce one or more of the terms of this Agreement and/or to enter judgment consistent with this Agreement, pursuant to Code of Civil Procedure section 664.6." Settlement Agreement at ¶ 43.  A 664.6 action is intended "to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit."  *Weddington Productions, Inc. v. Flick,* 60 Cal. App. 4th 793, 809 (1998).  Upon realizing that, despite the Settlement Agreement, Defendant did not recognize her as the rightful owner of shares A24 and A27 of the Theatrical syndicate, on March 30, 2004, Plaintiff filed a 664.6 action in California Probate Court (hereinafter "the 664.6 action").

In addition to filing a response in opposition to the merits of Plaintiff's 664.6 action, Defendant challenged the probate court's subject matter jurisdiction over the 664.6 action.  The probate court did not find itself lacking subject matter

jurisdiction and entered an order in favor of Plaintiff on the merits of the 664.6 action. Defendant appealed and the California Court of Appeal ultimately concluded that, despite the parties' agreement to the contrary, the probate court did not have subject matter jurisdiction. Accordingly, the probate court's judgment in favor of Plaintiff was vacated.

**B.  Michael's Request for Attorney Fees in the 664.6 Action**

Although the California Court of Appeal determined that the probate court lacked jurisdiction over the 664.6 matter, Defendant petitioned the probate court for a declaration that he was the prevailing party in the 664.6 action and for an award of attorney fees in accordance with paragraph 41 of the Settlement Agreement. Finding that it was without jurisdiction to determine the prevailing party and award attorney fees, the probate court denied Defendant's request for attorney fees.

Resolute in his quest for attorney fees, Defendant appealed the probate court's denial of his request for fees. Not surprisingly, the California Court of Appeal affirmed the probate court's denial of attorney fees, finding that a court without jurisdiction to enter a judgment is inherently without authority to enter an award of attorney fees.

**C.  The California and Kentucky Actions**

To determine the ownership of the two disputed Theatrical shares, in February of 2006, Plaintiff filed suit in California

state court against Defendant in his official capacity as trustee of Allen E. Paulson Living Trust.[1]  Unable to personally serve the complaint on either Defendant or his attorneys, Plaintiff eventually effected service by publication.  Defendant promptly removed the case to United States District Court and filed a motion to dismiss or in the alternative to transfer the case to Kentucky where Plaintiff had brought suit against him in his official capacity as manager of the Theatrical syndicate.  Defendant's motion to dismiss was denied, but the Court granted his motion to transfer.  The transferred case against Defendant in his capacity as trustee of the Allen E. Paulson Living Trust was consolidated with Plaintiff's suit against Defendant in his official capacity as manager of the Theatrical syndicate, resulting in the instant consolidated action.

## II.  Plaintiff's Attorney Fees

In his response brief, Defendant concedes that Plaintiff was the prevailing party in this litigation and that pursuant to the Settlement Agreement and California Civil Code § 1717(a)[2] she is

---

[1]

 The Allen E. Paulson Living Trust is administered in California.

[2]

"In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be

entitled to an award of reasonable attorney fees.  The Court will only award attorney fees which were reasonably spent in litigating this matter to a successful conclusion.  *See Horsford v. Bd. of Trustees of California State Univ.*, 33 Cal.Rptr.3d 644 (Cal. Ct. App. 2005); *see also PLCM Group v. Drexler*, 997 P.2d 511 (Cal. 2000).  The Court recognizes that Plaintiff's request for attorney fees in the amount of $1,122,060 for legal services which resulted in a Judgment for Plaintiff in the amount of $128,485 may, at first blush, seem entirely unreasonable.  The reasonableness of the fees sought by Plaintiff is discussed below, with the Court first outlining fees which were not reasonably incurred in litigating this matter to a successful conclusion, then examining the reasonableness of those fees to which Plaintiff is entitled.[3]

The Settlement Agreement provided for a 664.6 summary proceeding to resolve disputes regarding the Settlement Agreement. Despite the Settlement Agreement, the California Court of Appeal determined that the probate court was without jurisdiction to hear Plaintiff's 664.6 action.  Regardless of whether, as Plaintiff argues, her 664.6 petition failed because of a "technical deficiency" relied upon by Defendant, the fact remains that the

---

entitled to reasonable attorney's fees in addition to other costs."
Cal.Civ.Code § 1717(a).

[3]   The parties having fully briefed the matter, the Court
does not find it necessary to conduct a hearing on the issue of
attorney fees.

probate court was without jurisdiction to hear the 664.6 matter. As she was not the prevailing party in the 664.6 action - there was, in fact, no prevailing party - Plaintiff is not entitled to an award of attorney fees for that action.[4]

Similarly, Madeline is not entitled to an award of attorney fees for her legal expenses relating to the opposition of Defendant's 664.6 attorney fee motion and the appeal of same.[5] While Defendant was not awarded attorney fees, this fact does not render Plaintiff the prevailing party in the matter. The probate court lacked subject matter jurisdiction over the entire 664.6 matter. It did not find in favor of either party on the issue of attorney fees, it merely held - and the appellate court agreed - that it was without authority to render any decision in the matter. *See Miller-Leigh LLC v. Henson*, 62 Cal.Rptr.3d 83, 86 (Cal. Ct. App. 2007)("the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter.").

Trial courts are "given wide discretion in determining which party has prevailed on its cause(s) of action." *Roden v. AmerisourceBergen Corp.*, 67 Cal. Rptr.3d 26, 52 (Cal. Ct. App. 2007). "Furthermore, the trial court has the power to determine

---

[4] Plaintiff seeks an award of $164,629.98 for legal fees charged by DLA Piper in the 664.6 action and appeal.

[5] Plaintiff seeks an award of $95,340.21 for legal fees charged by DLA Piper in the 664.6 attorney fee motion and appeal.

that neither party prevailed. Requiring a determination for one party or the other in every case would encourage absurd results for if the court determines that neither party actually prevailed it would be unreasonable to award attorney fees." *Id.* (internal citations omitted). Examining the legislative intent of Cal. Civil Code § 1717, the California Court of Appeal found "no discernible intent to impose a mandatory duty to declare one prevailing party in cases where the victory and loss is [sic] evenly divided . . .." *Hsu v. Abrara*, 891 P.2d 804, 812 (Cal. 1995)(citing *Nasser v. Superior Court*, 156 Cal.App.3d 52, 59 (Cal. Ct. App. 1984). In the instant case, the probate court rendered no decision on the merits on the attorney fees motion. Accordingly, it would be absurd to award attorney fees, as there was no prevailing party.

Plaintiff employed three law firms to represent her in this litigation:  DLA Piper; Greenbaum, Doll, and McDonald; and the various firms at which attorney Donald David was employed. Defendant argues that it is unreasonable to expect him to pay for the duplicative services of each of the firms and their corresponding attorneys.  This Court agrees.  While it may have comforted Plaintiff to know that she had three firms and three sets of attorneys working on her case, it is not reasonable to expect Defendant to reimburse Plaintiff for the luxuries she provided herself in this litigation.  Because the Settlement Agreement was negotiated and initially litigated in California, it was reasonable

8

for Plaintiff to retain the services of DLA Piper and attorney

Barbara Orr who was intimately familiar with the facts surrounding

Plaintiff's case.  As a result of the Kentucky and California

actions being consolidated in this Court, it was also entirely

reasonable for Plaintiff to retain the services of Greenbaum, Doll

and McDonald, a law firm with an office in Lexington, Kentucky.

While attorney Donald David may have been familiar with the facts

and circumstances surrounding the Settlement Agreement, so was

Barbara Orr.  It is unreasonable to expect Defendant to pay the

costs of Mr. David's services when the prior knowledge he brought

to the table was already present through Ms. Orr's representation

of Plaintiff.  Additionally, the actions were brought in California

and Kentucky, which renders Plaintiff's decision to hire California

and Kentucky counsel all the more reasonable.  The Court is not

opining that Donald David did not render services valuable to this

litigation, but is of the opinion that requiring Defendant to pay

the entire cost of Plaintiff's extravagant legal team would be an

unreasonable application of this Court's discretion.[6]

The Court is mindful of Defendant's argument that it was

---

[6]  Upon examining the gallimaufry of invoices submitted by
attorney Donald David's firms, it appears that he billed
Plaintiff for over $227,000 in fees surrounding this litigation;
however, when the fees of DLA Piper and Greenbaum, Doll and
McDonald are subtracted from the $1,122,060 fee request, only
approximately $217,000 is left attributable to Mr. David.  In any
event, the exact amount of Mr. David's fees is irrelevant, as the
Court declines to award Plaintiff those fees.

unreasonable for Plaintiff to have more than one firm representing her in this action; however, the Court disagrees. Barbara Orr and her firm of DLA Piper were involved in the underlying trust litigation and were familiar with the facts and underlying circumstances of this litigation. Defendant mistakenly assumes that Greenbaum, Doll and McDonald could have taken on the representation of Plaintiff and obtained the same results - with the same number of billable hours - without the assistance of Barbara Orr. To borrow a phrase from Plaintiff's brief, by not "changing horses in the middle of the race," Plaintiff likely achieved litigation efficiencies, which ultimately benefits Defendant.

Finally, the Court declines to award Plaintiff $1,032.50 in fees billed by DLA Piper's librarians. The Court agrees with Defendant's contention that there is no basis for such an award. There appear to be no California cases discussing such an award and Plaintiff did not reply in opposition to this argument made by Defendant.

Now for the fees the Court will award. "The fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group v. Drexler*, 997 P.2d 511, 518 (Cal. 2000)(internal citations omitted). According to California law,

10

> the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court.... The value of legal services performed in a case is a matter in which the trial court has its own expertise.    The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony.

*Id.* at 519.  After carefully examining the invoices of Greenbaum, Doll and McDonald and DLA Piper, the undersigned is of the opinion that both the amount of time expended and the hourly rates of the attorneys and paralegals were reasonable.  Notably, Defendant himself concedes that Greenbaum, Doll and McDonald's fees are reasonable.  Def.'s Br. at 3.  While there were thousands of billable hours spent on this litigation, the hundreds of exhibits filed in support of the parties' motions for summary judgment evidence the extremely fact-specific nature of this case, which required much discovery.[7]

Contrary to Defendant's assertion, Plaintiff's California and Kentucky actions were not duplicative.  The California action was against Defendant in his capacity as trustee of the Allen E. Paulson Living Trust, a trust administered in California. Plaintiff's Kentucky action was against Defendant in his capacity as manager of the Theatrical syndicate which is based in Kentucky. Plaintiff cannot be faulted for Defendant's wearing of numerous

---

[7]  To the extent that Defendant was concerned with the duplicative billing for certain depositions and discovery-related issues, this concern should be alleviated by the Court's decision not to include in the attorney fees award the amount billed by attorney Donald David.

11

hats; she will be awarded fees for both the Kentucky and California actions, from inception to conclusion.

Defendant argues that if the Court awards Plaintiff the fees charged by DLA Piper, the rates of those attorneys and paralegals should be reduced to reflect the reasonable hourly rate of such professionals in Lexington, Kentucky.  A reasonable hourly rate is that charged by attorneys of similar skill and experience in the relevant community.  *PLCM*, 997 P.2d at 518.  While the relevant community is generally the forum in which the district court sits, rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir. 1997) (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).  While Greenbaum, Doll and McDonald acted as local counsel in this case, Plaintiff also retained the services of her California counsel who had detailed knowledge of the underlying facts and previous litigation. Given that this litigation originated in California and that Plaintiff's California attorneys were quite familiar with the fact-intensive nature of this case, it was entirely reasonable for Plaintiff to retain their services once the California action was transferred to Kentucky.

Based upon the affidavits presented and the Court's own

12

knowledge of the prevailing rates for legal services in Lexington, Kentucky, the Court finds that the rates charged by the DLA Piper and Greenbaum, Doll and McDonald attorneys are reasonable.  While Lexington, Kentucky, is clearly the relevant legal community for the Greenbaum, Doll and McDonald attorneys, as discussed, *supra*, the same is not true of the DLA Piper attorneys.  The California action was initiated in San Diego, California, which is also the location of DLA Piper's office.  San Diego, California is the relevant legal community for the DLA Piper attorneys.  Plaintiff should not be penalized by reducing the billable rates of the DLA Piper attorneys to the rates charged by attorneys in Lexington, Kentucky, as it was Defendant who moved to have the California action transferred to Kentucky.

Upon a thorough examination of the invoices and the affidavits in support, it appears that from the inception of the California and Kentucky actions until November 27, 2007, the date this Court entered its Memorandum Opinion and Order granting Plaintiff's motion for summary judgment and denying Defendant's motion for same, Plaintiff incurred reasonable attorney fees in the amount of $202,484.00 from Greenbaum, Doll and McDonald.  Plaintiff is entitled to an award of these fees.[8]  DLA Piper reasonably billed Plaintiff for $410,402.50 in fees, however, as previously

---

[8]  The Clerk of Court has previously approved Greenbaum, Doll and McDonald's Bill of Costs and taxed against Defendant costs in the amount of $14,783.56.

13

discussed, $1032.50 for librarian fees must be backed out of that figure, resulting in an award of $409,370.00 to Plaintiff. While DLA Piper included in its invoices for the California and Kentucky actions $17,832.28 in costs, the Court will not award such costs as an element of attorney fees, as costs are properly presented to the Clerk of Court in a Bill of Costs. Fed. R. Civ. P. 54.

Plaintiff has not presented to the Court proof of any attorney fees she incurred after the Court's November 27, 2007, Memorandum Opinion and Order. Plaintiff shall have ten days from the date of entry of this Order in which to submit to the Court an accounting of such fees, being mindful of the Court's determinations regarding the reasonableness of such fees.

### III. Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

1) That Plaintiff shall be awarded attorney fees in the amount of $611,854.00, to be supplemented by the Court upon Plaintiff's timely production of proof of fees incurred since November 27, 2007;

2) That Plaintiff shall have ten (10) days from the date of entry of this Order in which to produce proof of fees incurred in this litigation since November 27, 2007; and

3) That Defendant shall have ten (10) days from the date Plaintiff produces said fees in which to respond to the reasonableness of those fees.

This the 5th day of June, 2008.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge